ORIGINAL

FILED
DEC 28 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ROSEBUD SIOUX TRIBE
11 LEGION AVENUE
P.O. BOX 440
ROSEBUD, SOUTH DAKOTA 57570

Plaintiff,

CASE NO. 06-924 L

V.

UNITED STATES OF AMERICA,

Defendant.

---

**COMPLAINT**

## A. INTRODUCTION

1. This is an action for money damages, with interest, against the Defendant, United States of America. This case arises out of Defendant's breaches and continuing breaches of its constitutional, statutory, regulatory, treaty, common law and other legal, accounting, fiduciary, administrative and management duties owed to Plaintiff to generate, invest and manage the Plaintiff's tribal trust assets and property in the manner prescribed by applicable law.

## B. PARTIES

2. Plaintiff, ROSEBUD SIOUX TRIBE, (hereinafter "Plaintiff"), is a federally recognized Indian tribe, under the protection of the United States, recognized by the United States as a sovereign Indian tribe with legal rights and responsibilities. The

Plaintiff has a governing body duly recognized by the Secretary of the Interior. The Plaintiff is also recognized by the United States as a Tribe which is eligible for the special programs and services provided by the United States to Indians because of their status as Indians, pursuant to Plaintiff's treaties and agreements with the United States, various Acts of Congress and federal common law.

3. Defendant, UNITED STATES OF AMERICA, (hereinafter "United States" or "Defendant"), is a body politic existing pursuant to the Constitution of the United States of America.

**C. JURISDICTION**

4. This Court has jurisdiction over the subject matter of this action under the Tucker Act, 28 U.S.C. §1491 and the Indian Tucker Act 28 U.S.C. §1505 in that this action involves claims brought by an Indian tribe residing within the territorial limits of the United States against the United States for money damages arising under the constitution, laws, treaties and regulations of the United States, Executive Orders of the President and federal common law governing the administration and management of property and assets held by the United States in trust for the Plaintiff. In addition thereto, this action would be cognizable in the Court of Federal Claims if the Plaintiff were not an Indian Tribe, band or group. The Court also has jurisdiction over the subject matter under the Constitution of the United States and the American Indian Trust Fund Management Reform Act of 1994, 25 U.S.C.§ 4001 et seq., which required the Defendant to provide the Plaintiff with a full and complete accounting of the holder's funds to the earliest possible date. 25 U.S.C. §4044.

## D. STATEMENT OF FACTS

5. In Sioux Nation v. United States, 24 Ind.Cl. Comm., 147, 162 (1970), the Indian Claims Commission ("ICC") found that in its broadest context the Sioux Nation is composed of seven divisions: (1) Medwakantons; (2) Sissetons; (3) Wahpakootas; (4) Wahpetons; (5) Yanktons; (6) Yantonai; and (7) Tetons. The Teton division is composed of seven bands including the Upper Brule Band ("Brule") which currently resides on the Rosebud Reservation.

6. In Article 2 of the 1825 Treaty, (7 Stat. 250,) proclaimed on February 6, 1826, the United States brought the Brule and other Sioux Bands under the protection of the United States. Article 3 of this Treaty also extended to the Brule the protections of the United States Trade and Intercourse Acts. See Acts of: July 22, 1790, ch. 33, 1 Stat. 137; July 22; March 1, 1793, 1 stat. 329; May 19, 1796, 1 Stat. 469; March 3, 1799, ch 46, 1 Stat. 743; March 30, 1802, 2 Stat. 139; and June 30, 1834, Ch. 161 §12 , 4 Stat. 730, 25 U.S.C. § 177.

7. The Courts of the United States have held that proof of coverage by the Act of June 30, 1834, ch.161 §12, 4 Stat. 730, 25 U.S.C.§ 177, establishes the existence of a fiduciary relationship between the federal government as guardian and the covered Indian tribe as ward. Narragansett Tribe of Indians, v. Southern Rhode Island Land Development Corp, D.C. R.I, 418 F. Supp. 798 (1976). The Courts have also held this section establishes a trust relationship between the United States and the tribe involved with respect to the protection of the tribe's lands. Joint Tribal Council of Passamaquoddy Tribe v. Morton, D.C. Me. 388 F. Supp., 649, affirmed 528 F. 2d. 370 (1975). This statute also forms the basis for the trust status of tribal lands and assets.

Id. By virtue of the duties imposed by this Act, the United States has an obligation to do whatever is necessary to protect Indian land when it becomes aware that Indian rights have been violated. Id.

8. The 1825 Treaty and many Brule treaties subsequent thereto provided for the payment of monies or the provision of benefits to the Brule people. Some of these provisions resulted in the creation of trust fund accounts in the United States Treasury, and in some instances established parameters for the management and use of those monies.

9. After the Powder River War of 1866-1868, the Sioux and United States entered into the Fort Laramie Treaty dated April 29, 1868, 15 Stat. 635. Article 2 of the Treaty established a permanent reservation for the Brule and other Sioux bands This reservation is commonly referred to as the "Great Sioux Reservation," and is described in the 1868 Treaty generally as encompassing all of present day western South Dakota west of the low water mark of the east bank of the Missouri River.

10. In Article 1 of the Act of February 28, 1877, (19 Stat. 252) Congress took control and possession of the Black Hills portion of the Great Sioux Reservation. In Article 8 of that same Act, the Congress also provided that "Congress shall by appropriate legislation, secure to them [the Sioux Bands] an orderly government; they shall be subject to the laws of the United States, and each individual shall be protected in his rights to property, person and life."

11. Article 5 of the Act of February 28, 1877, further state that "Ïn consideration of the foregoing cession of territory and rights, and upon full compliance with each and every obligation assumed by the said Indians, the United States does agree to provide

all necessary aid to assist the said Indians in the work of civilization." This Section has been quoted as providing one of the legal basis for a series of appropriations to the Brule people. Some of these appropriations were or should have been held in trust for the benefit of the Brule and other Sioux Bands.

12. While the 1877 Act stated that the 1868 Treaty bands, including the Brule, should be "subject to the laws of the United States," the Supreme Court subsequently interpreted this clause to mean that "[t]hey were nevertheless to be subject to the laws of the United States, not in the sense of citizens, but as they had always been, as wards subject to a guardian." Ex Parte Crow Dog, 109 U.S. 556, 568-69 (1883). Thus, Article 8 of the 1877 Act both acknowledged and reaffirmed the United States' trust responsibility to protect the rights and property of the Brule.

13. In Section 2 of the Act of March 2, 1889, 25 Stat. 888, Congress established the Rosebud Sioux Reservation for the Brule, which reservation is legally described as follow:

> That the following tract of land, being a part of said Great Reservation of the Sioux Nation, in the Territory of Dakota, is hereby set apart for permanent reservation for the Indians receiving rations and annuities at the Rosebud Agency, in said Territory of Dakota, namely: Commencing in the middle of the main channel of the Missouri River at the intersection of the south line of Brule County; thence down said middle of the main channel of said river to the intersection of the ninety-ninth degree of west longitude from Greenwich; thence due south tot he forty- third parallel of latitude; thence west along said parallel to a point due south from the mouth of Black Pipe Creek; thence due north to the mouth of Black Pipe Creek; thence down White River to a point intersecting the west line of Gregory County extended north; thence south on said extended west line of Gregory County to the intersection of the south line of Brule County extended west; thence due east on said south line of Brule County extended to the point of beginning in the Missouri River, including entirely within said reservation all islands, if any, in said river.

25 Stat. 888, § 2.

14. In a series of agreements and under a series of statutes, including but not limited to Section 8-12 of the 1889 Act, the Act of March 3, 1899, 30 Stat. 1362; Act of May 30, 1910, ch. 260, 36 stat. 448; and the Act of April 23, 1904, ch. 1484, 33 Stat. 254, the Tribe lost or ceded certain of tribal these lands to the United States and other third parties. The United States, nonetheless, had a fiduciary duty to manage, administer and protect these ceded and lost lands and the revenues derived therefore during the period that they were held for the benefit of the Plaintiff.

15. The Brule Band, under its new name, the "Rosebud Sioux Tribe" accepted the terms and conditions of the Indian Reorganization Act of 1934 (IRA), 25 U.S. C. § 461 et. seq. and reorganized its government under that Act. As a part of its reorganization under the IRA, the Rosebud Sioux Tribe also adopted a federally approved Constitution and By- Laws under Section 16 of the Act, 25 U.S.C. §476 and a federal charter under Section 17 of the Act, 25 U.S.C.§ 477.

16. Currently the Plaintiff resides on the Rosebud Indian Reservation. The Plaintiff remains the successor in interest to the signatories of certain Indian treaties with the United States, pursuant to 25 U.S.C. § 478b. Plaintiff is the beneficial owner of certain monies currently or previously held in trust for the Plaintiff by the United States, and/or which should have been or should be held in trust for the Plaintiff by the United States. The Plaintiff is also the beneficial owner of certain land, and other trust assets, title to which is held in trust by the United States for the benefit of the Plaintiff. Many of these lands are valuable for grazing, agricultural and recreational uses. The Plaintiff's trust assets also include the natural resources located on that land, including, among

others: water, timber, gravel and a variety of mineral reserves. Plaintiff also holds off-reservation assets and usufructuary rights held in Trust by the Defendant.

17. Under the terms of its treaties, and under other applicable law, tribal land and associated resources held in trust are inalienable except as authorized by Congress, or by the terms and conditions of the Plaintiff's treaties with the United States and the Plaintiff's federally approved organic documents. See, Constitution, By Laws and Charter of the Rosebud Sioux Tribe. Congress has granted the Secretary of the Interior the authority to approve certain limited conveyances of certain interests in the Plaintiff's trust lands and trust resources, including but not limited to: leases, easements, rights-of-way, resource harvesting and resource use agreements. Federal law establishes the terms and conditions under which such conveyances, leases and agreement may be made. Federal law also generally requires that compensation be paid to the Plaintiff for the conveyance and/or use of its trust lands and trust resources.

18. By various treaties, Executive Orders, and Acts of Congress, commencing with statutes adopted more than a century ago, Congress authorized the Secretary of the Interior to collect income from tribal trust property and to deposit such trust income in the United States Treasury and other depository institutions for the benefit of the Plaintiff. Some of these authorizations and subsequent statutes directed that interest be paid on tribal trust funds, and required that such trust funds be invested. <u>See.</u> <u>E.g</u>. Act of February 12, 1929, ch. 178 § 1, 45 Stat. 1164, <u>codified as amended</u> 25 U.S.C. §161a (1982); Act of June 24, 1938, ch. 648 §1, 52 Stat 1037, <u>codified as amended</u>, 25 U.S.C. § 162 (a), and the Act of October 4, 1984, Pub.L. 98-451, 98 Stat. 1729, codified as amended, 25 U.S.C. § 161a (a) (2000). Because of the enactment of these statutes

the United States assumed a statutory duty which runs concurrently with its common law obligations to properly manage the Plaintiff's trust assets, monies and property for the highest and best use of the Plaintiff.

19. As the court found in Chippewa Cree Tribe of the Rocky Boy Reservation v. United States, 69 Fed. Cl. 639, (2006), legislation enacted by Congress over the past century has consistently required the United States to increase the productivity of funds that it holds in trust for Indian Tribes. Osage Tribe of Indians of Oklahoma v. United States, No. 990550L (Sept 21, 2006).

20. Since its establishment of a government-to-government relationship with the Plaintiff, the Defendant has assumed control and management over the Plaintiff's trust property and trust resources. The Defendant's duty with regard to the management and administration of the Plaintiff's trust assets is well described in guidelines found in 25 C.F.R. § §115.01 through 115. 1001. In this capacity the Defendant has approved leases, easements, rights-of-way and other uses and conveyances of the property and the resources located therein. Defendant has also approved various third party uses and taking of said land and resources. In so doing the Defendant assumed responsibility for the collection, deposit and investment of the income generated or which should have been generated by such conveyances and use rights.

21. Because the United States holds the Plaintiff's lands, resources and the proceeds generated by and from the use, sale, or taking of said resources in trust, it has assumed the obligations of a trustee. U.S. v. Mitchell, 463 U.S. 206, 225 (1983); Cobell v. Norton, 240 F. 3d 1081 (D.C. Cir. 2001). As trustee, the United States has a fiduciary duty to the Plaintiff to administer the trust with the greatest skill and care

possessed by a trustee. The United States has charged itself with a moral obligation of the highest responsibility and trust in its conduct with Indian tribes and its conduct should therefore be judged by the most exacting fiduciary standards. Cobell 240 F. 3d at 1099 (quoting Seminole Nation v. United States, 316. U.S. 286, 297 (1942). This includes a duty to insure that the tribal trust property, funds and assets are protected, preserved and managed in full compliance with the Defendant's trust duties and applicable law.

22. The United States Court of Federal Claims has addressed the statutory obligations of the United States under 25 U.S.C.§§ 161a and 161b, and 162a, and has consistently held the United States responsible for investing Indian trust funds in the highest yielding investment vehicles available to the funds in question. See. Mitchell v. U.S. 664 F.2d 265, Ct. of Cl. 1981; Cobell v. Norton, 240 F. 3d 1081 (D.C. Cir 2001); Cheyenne Arapaho Tribe of Indians of Oklahoma et al v. United States, 512 F. 2d 1390 (March 19, 1975).

23. The trust obligation of the United States includes, among other duties, the duty to insure that tribal trust property and trust funds are protected, preserved and managed so as to insure the highest and best use of those assets and funds, and where applicable, the highest revenue to the tribal owner consistent with the trust character of the property. Said duty requires the United States to further insure that the Plaintiff is afforded its full rights to compensation for any taking of trust assets as required by the Constitution of the United States and other applicable law, and that it administers those duties with the greatest skill and care possessed by a trustee.

24. The Defendant, acting through its Secretary of the Interior, also has the responsibility to:

A. Provide adequate systems for accounting for and reporting trust fund balances;

B. Provide adequate controls over receipts and disbursements;

C. Provide periodic and timely reconciliations to insure the accuracy of accounts;

D. Determine accurate cash balances;

E. Prepare and supply account holders with periodic statements of their account performance and with balances of their account to be available on a daily basis;

F. Establish consistent written policies and procedures for trust fund management and accounting;

G. Provide adequate staffing, supervision and training for trust funds management and accounting; and

H. Appropriately manage the natural resources located both within the boundaries of Indian reservations and on other trust lands.

See 25 U.S.C. §162d, See also 25 U.S.C. § 4011.

25. The trust obligations of the United States include, among others, the duty to (a) exercise opportunities to obtain monetary benefits from the Plaintiff's trust land and resources, (b) enter into reasonable contracts to advance those opportunities , (c) timely collect the trust funds rightly owed to the Plaintiff and any penalties and interest associated with income generating transactions, (d) timely create trust accounts to hold those funds, (e) insure that the monies owed or paid for the loss or use of trust lands and resources are placed in those accounts in a timely manner, (f) maintain adequate records with respect to the Plaintiff's trust property, (g) maintain adequate systems and

controls to guard against errors or dishonesty, (h) provide regular and accurate accountings to the Plaintiff as the trust beneficiary, (i) refrain from self-dealing or benefiting from the management of the trust property, (j) insure the Federal Government's compliance with the protections afforded the Plaintiff under the Constitution of the United States and other applicable law, and (k) consult with the Plaintiff regarding the management of its trust property and the implementation of the Government's treaty obligations.

26. Through its agencies, primarily the Department of the Interior and the Department of Treasury, Defendant has undertaken and continues to undertake the responsibilities to account for, manage and otherwise act as a fiduciary trustee on behalf of the Plaintiff.

27. For at least the past several decades, Defendant's accounting for, management of, and exercise of other fiduciary responsibilities and control over Indian trust funds has been thoroughly examined and highly criticized by private entities, various government agencies, Congress and the courts. Problems identified include, but are not limited to, the Defendant's inability to account for funds due to its loss of or failure to keep records, undue delays in making investments, and poor investment decision-making, such as investing in failed financial institutions. The Defendant's continuing widespread and well-documented Indian trust fund mismanagement, and other breaches of trust have affected and continue to affect the Plaintiff's trust assets and have caused and continue to cause monetary losses to the Plaintiff.

28. The Defendant has failed to keep records of and/ or has failed to keep proper records regarding the Plaintiff's trust accounts and assets, and these failures

continue today. Defendant has never provided the Plaintiff with a full and meaningful accounting of its trust assets and trust funds. Indeed, before filing this action, the Plaintiff filed a complaint in the United States District Court for the District of Columbia, Rosebud Sioux Tribe v. Kempthorne 1:05-CV-02492, demanding a full accounting of its trust accounts, trust assets and trust property. To date, the Defendant has failed to provide that accounting or other sufficient information which would otherwise afford the Plaintiff the ability to determine whether, and to what extent, it has suffered a loss as a result of the Defendant's continual wrongdoing or other breaches of trust.

29. The Defendant has failed to obtain and continues to fail to obtain the maximum investment return possible (within allowable investments under law) on the Plaintiff's trust funds. This breach of fiduciary duty has caused and continues to cause monetary loss to the Plaintiff.

30. Complaints voiced by tribal leaders and other third parties led the Congress of the United States to undertake an investigation into Defendant's management and oversight over tribal trust accounts. E.g. Cobell 204 F. 3d 1081 (D.C. Cir 2001). Congress has recognized the gross breaches of trust described herein, as has the General Accounting Office and the Office of Management and Budget. The Office of Management and Budget consistently placed the financial management of Indian trust funds, including those belonging to the Plaintiff, as a "high risk liability" to the United States.

**E. EQUITABLE TOLLING/DELAYED ACCRUAL**

31. By the Act of December 22, 1987, Pub. L. 100-202, 101 Stat. 1329, Congress imposed two requirements on the Defendant: (1) to audit and reconcile tribal

trust funds and (2) to provide the Plaintiff and other tribes with an accounting of such funds. Congress reaffirmed these two mandates in subsequent statutes, namely, the Act of October 22, 1989, Pub. L. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. 101-512, 104 Stat. 1915; and the Act of November 3, 1991, Pub. L. 101-154, 105 Stat. 990. By these Acts, Congress further required that the Defendant certify, through an independent party, the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds.

32. To protect the rights of tribes until the aforementioned accountings of their trust funds could be completed, Congress has included, in a series of Interior Department Appropriations Acts, language providing that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." See, Act of November 5, 1990, Pub. L. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. 104-134, 110 Stat, 1341; Act of September 30, 1996, Pub. L. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. 105-227, 112 Stat. 2681; Act of November 29, 1999, Pub. L. 106-113, 113 Stat. 1501; Act of October 11, 2000, Pub. L. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. 107-63. Pub.L. 109-158 (December 30, 2005).

33. To satisfy the requirements of the Act of December 22, 1987, the Defendant, among other things, retained the accounting firm of Arthur Andersen LLP ("Arthur Andersen") to prepare and issue reports to the Plaintiff and other federally recognized Tribes. The Arthur Andersen Report that the Plaintiff received was not sufficient to draw any conclusion on the accuracy of the accounting of the Plaintiff's trust funds, or the acceptability of the investment management of those funds by the Defendant. Thus, it was not a reconciliation of the Plaintiff's trust fund accounts. Also, said Report failed to cover account activity during a sizable period of the time during which the Defendant exercised control and management over the Plaintiff's trust assets. The Report was also limited to an accounting of the Plaintiff's monetary trust funds and thus, did not provide any type of assessment of, or accounting for, other trust assets such as the Plaintiff's land, and natural resources which are now, and have been, under the management and control of the Defendant. Thus, it was not a complete reconciliation.

34. The United States Government, through its agents, has exercised management and control over the Plaintiff's tribal trust assets since the inception of the Plaintiff's government-to-government relationship with the United States. No effort to attempt to audit the Plaintiff's accounts was undertaken before Fiscal Year 1988. The beginning cash and investment balances in the Plaintiff's tribal trust accounts have never been audited or reconciled to date. Instead, the United States Government and its agents, acting as the tribes "fiduciary" merely carried forward those unaudited starting balances when it undertook the accounting and reconciliation efforts required by the Act of December 22, 1987.

35. The deficiencies and gaps endemic to the Defendant's accounting system, have severely limited the Plaintiff's ability to determine the full extent of its losses as a result of the Defendant's breach of its fiduciary duties. For the reasons stated above, this problem has not been cured by the Defendant's preparation and release of the Plaintiff's Arthur Andersen Report prepared pursuant to the Act of December 22, 1987.

36. To address this problem, the Plaintiff has commenced an action against the Secretary of the Interior, the Secretary of the Treasury and the Special Trustee for Indian Affairs, in the United States District Court for the District of Columbia, Rosebud Sioux Tribe v. Kempthorne, et. al, Case No. 1:05-CV-02492. To the extent that such an accounting, to which the Plaintiff is entitled, determines or otherwise reveals that the Plaintiff has one or more additional monetary claims against the Defendant, the Plaintiff seeks damages on those claims in this action. The Plaintiff will also seek the opportunity to amend this complaint to allege those additional claims and to plead the claims already advanced herein with more specificity, at such time as the Defendant provides the Plaintiff with information which is currently in its exclusive possession and control.

37. Defendant's management and involvement with monies and properties which are, were or should have been, held in trust for the Plaintiff, dates back to the time that the Plaintiff entered into its treaties with the United States. The Report that the Defendant and its contractor, the Arthur Andersen LLP has prepared pursuant to the Act of December 22, 1987 and subsequent federal statutes, fails miserably in its attempt to reconcile the Plaintiff's trust fund balances. The Arthur Andersen Report also fails to cover the entire period during which the Defendant managed the Plaintiff's

trust funds and assets and is therefore incomplete.

38. The Defendant fraudulently concealed the operative facts concerning the existence of the causes of action, claims and other instances of mismanagement of trust property, assets and monies, so as to prevent the Plaintiff from fully prosecuting or pursuing its rights to a full and complete accounting, damages and other claims arising out of the Defendant's failures as alleged herein, including but not limited to, the mismanagement of trust properties, assets, monies and other damages.

39. In furtherance of their fraudulent concealment and deception, the Defendant concocted a scheme, artifice, or plan to create the false appearance of a full, complete and meaningful accounting or reconciliation of funds or monies otherwise due Plaintiff and continuously, for a period of in excess of 100 years, up to and including the present time, has continued to conceal the facts which would support Plaintiff's claims, so as to delay the accrual of any cause of action otherwise arising out of the mismanagement of Plaintiff's properties, land and other trust assets.

40. Defendant has continued, up to the present time, to fail to render any bonafide reconciliation and accounting despite being legally obligated to provide such under applicable law, so as to toll and/or render any limitations of the actions, statutes, regulations or other rule of law, which is premised upon the pretense of a reconciliation void and meaningless.

## F. BREACH OF FIDUCIARY DUTY

41. The Plaintiff alleges and incorporates by reference the allegations contained in paragraphs 1-40 above.

42. Defendant has breached its fiduciary duty, as described above, through its

conduct and omissions stated as follows:

A. The Defendant has breached its fiduciary duty to the Plaintiff by failing to obtain the highest available rates of interest and earnings on the Plaintiff's trust funds, as required by 25 U.S.C.§§ 155, 161, 161a and 162a, 162b and its trust responsibilities to the Plaintiff.

B. The Defendant has breached its fiduciary duty to the Plaintiff by failing to deposit the Plaintiff's trust monies in interest bearing accounts in a timely manner.

C. The Defendant has breached its fiduciary duty to the Plaintiff by failing to properly invest the Plaintiff's trust monies in a timely manner.

D. The Defendant has breached its fiduciary duty to the Plaintiff by prematurely withdrawing the Plaintiff's trust funds from interest generating accounts.

E. The Defendant has breached its fiduciary duty to the Plaintiff by entering into or authorizing below market value contracts, leases, permits, rights-of-way and other similar arrangements dealing with the Plaintiff's real property and natural resources.

F. The Defendant has breached its fiduciary duty to the Plaintiff by generally failing to obtain the highest and best price for the use and taking of Plaintiff's trust assets.

G. The Defendant has breached its fiduciary duty to the Plaintiff by failing to charge, or collect rents, royalties or other proceeds on leases, permits, rights-of-way and other similar transactions involving the Plaintiff's trust properties and/or by failing to collect and deposit those monies in interest bearing accounts in a timely manner.

H. The Defendant has breached its fiduciary duty to the Plaintiff by allowing third parties to use, remove, encumber, waste, damage, spoil and otherwise take possession of the Plaintiff's trust assets without consultation with the Plaintiff and/or without adequate compensation.

I. The Defendant has breached its fiduciary duty to the Plaintiff by allowing churches, schools, government agencies and other third parties to have the use and benefit of Plaintiffs trust properties without adequate compensation.

J. The Defendant has breached its fiduciary duty to the Plaintiff by allowing third parties to cause damage to the Plaintiff's trust properties and natural resources without paying compensation to the Plaintiff.

K. The Defendant has breached its fiduciary duty to the Plaintiff by failing to enforce the reverter clause contained in various federal statutes and in various deeds and use agreements dealing with the Plaintiff's real property. See, e.g. 25 U.S.C. § 280.

L. The Defendant has breached its fiduciary duty to the Plaintiff by failing to properly invest and manage the Plaintiff's judgment funds, congressionally appropriated funds and other trust monies in a timely manner and in a manner which obtains the maximum investment return possible. This cause of action does not include and shall not be construed to include any claims for an accounting, reconciliation or damaged derived from the United States Indian Claims Commission Award designated as Docket 74-A and the United States Court of Claims Award designated as Docket 148-78 as per the direction of the Plaintiff. The Plaintiff continues to assert that these awards violated the Plaintiff's treaty and constitutional rights. Thus, they have been rejected by the Plaintiff.

M. The Defendant has breached its fiduciary duty to the Plaintiff by failing to administer and manage the Plaintiff's trust lands, funds and assets with the greatest skill and care required of a trustee.

N. The Defendant has breached its fiduciary duty to the Plaintiff by failing to exercise opportunities which would have maximized the productive use of the Plaintiff's land and resources and the income derived there from.

O. The Defendant has breached its fiduciary duty to the Plaintiff by failing to provide the consideration it agreed to provide, or was required to provide, in and pursuant to treaties, statutes, appropriations, contracts and other agreements involving the Plaintiff .

P. The Defendant has breached its fiduciary duty to the Plaintiff by conveying or allowing the conveyance of the Plaintiff's trust assets to third parties without adequate compensation and protections.

Q. The Defendant has breached its fiduciary duty to the Plaintiff by engaging in self dealing and/or by converting the Plaintiff's trust assets to its own use without adequate compensation.

R. The Defendant has breached its fiduciary duty to the Plaintiff by failing to adhere to the requirements of 25 U.S.C. §162d.

S. The Defendant has breached its fiduciary duty to the Plaintiff by failing to pay the Plaintiff the interest or compound interest on certain liquidated amounts and judgments. This has resulted in severe breaches of fiduciary duty including, without limitation, unconscionable consideration awards. Said payments were

unconscionable because the Plaintiff was not placed in the position that they would have occupied, and would occupy today, if the Defendant had performed its duty.

T. The Defendant has breached its fiduciary duty to the Plaintiff, by failing to charge, enforce and collect late penalties, breach of contract penalties, trespass damages and penalties, insurance payments certain cost share and other payment obligations, condemnation awards, delinquent rent payments, damage claims and other similar damages and interest thereon.

U. The Defendant has breached its fiduciary duty to the Plaintiff, by failing to require lessors and others users of trust assets owed by Plaintiff to procure bonds, insurance or surety arrangements to protect the rights of the Plaintiff and to collect from those sureties, damages owed to the Plaintiff.

**G. WHEREFORE, THE PLAINTIFF CLAIMS DAMAGES AGAINST THE UNITED STATES OF AMERICA AS FOLLOWS:**

1. Consequential damages according to proof,
2. Incidental damages according to proof,
3. Compound interest on liquidated amount and judgment awards,
4. Pre-judgment interest,
5. Costs of the suit herein,
6. Attorneys fees, according to statute,

/ /

/ /

7. Any and all other relief and damages as permitted by this Court or applicable law.

DATED THIS 19 of December, 2006.

COUNSEL OF RECORD FOR PLAINTIFF:

Brian J. Leinbach, Esq.
California State Bar No.161739
bleinbach@elllaw.com
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Blvd, 16th Floor
Los Angeles, California 90067
Tel: (310) 552-3800
Fax: (310) 552-9434
**Attorneys for Plaintiff**

OF COUNSEL:

Walter J. Lack, Esq.
California State Bar No. 57550
wlack@elllaw.com
ENGSTROM, LIPSCOMB & LACK
10100 Santa Monica Blvd, 16th Floor
Los Angeles, California 90067
Tel: (310) 552-3800
Fax: (310) 552-9434

Patricia A. Marks, Esq.
U.S. District Court Bar No. 446702
Markspattyesq@aol.com
15992 A.E. Mullinix Road
Woodbine, Maryland 21797-8440
Tel: (410) 489-4553
Fax: (301) 854-5117

Thomas V. Girardi, Esq.
California State Bar No. 36603
sfujimoto@girardikeese.com
GIRARDI & KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017-1904
Tel: (213) 977-0211
Fax: (213) 481-1554

Gregory A. Yates, Esq.
U.S. District Court Bar No. 001
California State Bar No. 63259
gyates@gregoryayates.net
16830 Ventura Boulevard, Suite 250
Encino, California 91436
Tel: (310) 858-6944
Fax: (818) 905-7038