# In the United States Court of Federal Claims

No. 06-924 L

(Filed December 2, 2011)

| | |
|---|---|
| ROSEBUD SIOUX TRIBE, | ) Subject matter jurisdiction;  28 U.S.C. § |
| Plaintiff, | ) 1500 (2006); *Tohono O'Odham Nation*, |
| | ) 131 S. Ct. 1723 (2011); RCFC 12(b)(1); |
| v. | ) Indian trust claims;  substantially the |
| | ) same operative facts. |
| THE UNITED STATES, | ) |
| Defendant. | ) |

*Brian J. Leinbach*, Los Angeles, CA, for plaintiff.

*Romney S. Philpott*, United States Department of Justice, Washington, DC, with whom was *Ignacia S. Moreno*, Assistant Attorney General, for defendant. *Anthony P. Hoang*, United States Department of Justice, Environment and Natural Resources Division; *Dondrae Maiden*, Office of the Solicitor, United States Department of the Interior; and *Rebecca Saltiel*, Office of the Chief Counsel, Financial Management Service, United States Department of the Treasury, Washington, DC, of counsel.

## OPINION AND ORDER

**Merow**, *Senior Judge*.

By statute this court lacks jurisdiction over any suit "for or in respect to" claims that are pending in another court.  Defendant's Motion to Dismiss contends that plaintiff's previously-filed district court complaint shares substantially the same operative facts as this, the second-filed action.  For the following reasons, because plaintiff's district court litigation was pending at the time the instant matter was filed, and was "for or in respect to the same claim," applying 28 U.S.C. § 1500 (2006) as recently clarified by *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723 (2011), defendant's Motion is **GRANTED**.

Plaintiff, Rosebud Sioux Tribe ("Rosebud") filed this action on December 28, 2006, alleging defendant had not properly managed its tribal trust assets and seeking damages for breach of trust.  Nearly one year earlier, on December 30, 2005, Rosebud filed suit in the United States District Court for the District of Columbia against

several federal officials. *Rosebud Sioux Tribe v. Norton*,[1] No. 1:05CV02492 (D.D.C.). Rosebud's Amended Complaint in the district court filed on July 17, 2006, ECF No. 12, alleges the United States mismanaged tribal funds, land, natural resources and other assets and failed to render adequate accountings. Judicial review of management and record-keeping was requested, as well as an accounting and reconciliation of trust funds and assets.

Pending before this court is defendant's Motion to Dismiss for Lack of Jurisdiction, ECF No. 36, filed June 13, 2011. Rosebud's Opposition, ECF No. 37, was filed on July 14, 2011. Defendant's Reply, ECF No. 40, was filed on August 1, 2011. Defendant's Notices of Supplemental Legal Authority, ECF Nos. 41, 42, 43 and 44 were filed on October 13 and 28 and November 7 and 29, 2011, respectively.

## Legal Standards

### A. Jurisdiction

Litigation against the United States requires an explicit waiver of sovereign immunity. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969).

Whether the court has jurisdiction is a threshold requirement. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). Rosebud has the burden of establishing subject-matter jurisdiction. *Keener v. United States*, 551 F.3d 1358, 1361 (Fed. Cir. 2009) (citing *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). Absence of subject matter jurisdiction may be raised at any time, by any party or the court *sua sponte*, even initially on appeal. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the

---

[1] Original named defendants were Gale Norton, Secretary of the Interior; Ross O. Swimmer, Special Trustee, Office of Special Trustee for American Indians, Department of the Interior; and John W. Snow, Secretary of the Treasury.

litigation, even after trial and the entry of judgment."); *Diggs v. Dep't of Housing & Urban Dev.,* __F.3d __, 2011 WL 5153618, at * 2, *4 (Fed. Cir. Nov. 1, 2011); *see also Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise *sua sponte*, subject matter jurisdiction at any time." (citing *Arbaugh*, 546 U.S. at 506)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

## B.  28 U.S.C. § 1500

28 U.S.C. § 1500 precludes this court from exercising jurisdiction over a claim if at the time of filing the plaintiff "has pending in any other court" another suit against the United States (or against individuals acting under the authority of the United States) "for or in respect to" that claim.

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

In *Tohono*, the Supreme Court recognized that § 1500 "effects a significant jurisdictional limitation" on the United States Court of Federal Claims ("CFC"), designed to "save the Government from burdens of redundant litigation." 131 S. Ct. at 1729–30.  The Supreme Court explained that for the purposes of § 1500, "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id*. at 1731.

## Procedural History

Rosebud's Complaint in the district court was filed on December 30, 2005, and the Amended Complaint was filed on July 17, 2006.[2]  Five months later, on

---

[2]  When determining whether a claim is "pending" for purposes of section 1500, this court
(continued...)

December 28, 2006, Rosebud filed this CFC action, ECF No. 1.  The Parties' Joint Motion for Temporary Stay of Litigation was granted on February 21, 2007.[3/] (Order, ECF No. 9.)  The stay was renewed nine times at the joint request of the parties. (ECF Nos. 12, 20, 22, 26, 28, 30, 32, 35 and 39.)

Defendant's Motion to Dismiss,[4/] ECF No. 36, asserts that *Tohono* dictates dismissal because Rosebud filed its CFC Complaint for damages for alleged breaches of fiduciary duty and mismanagement of trust assets while its district court case, based on substantially similar operative facts, was pending.  Under § 1500, the CFC case must be dismissed.

Rosebud's initial objection in its Opposition, ECF No. 37, that defendant's Motion to Dismiss violates the Stay of Litigation is incorrect.  As defendant observes, the parties' latest request for a stay, ECF No. 38, filed July 20, 2011 and subsequently granted, ECF No. 39, on July 22, 2011, extended the stay "[t]hrough January 25, 2012, except for the limited task of briefing and determining whether the Court has subject-matter jurisdiction over this case."  Moreover, in the Parties' Joint Status Report filed July 20, 2011 in the district court action (the latest in a series of seven reporting on related litigation in the CFC, settlement attempts and other matters), the propriety of the consideration of the subject matter issues presented here was acknowledged:

---

[2/] (...continued)
follows the longstanding principle that "the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (citations omitted). *See Trusted Integration v. United States*, 659 F.3d.1159, 1166 n.2. (Fed. Cir. 2011). Because Rosebud's Amended Complaint was pending in the district court at the time that Rosebud filed suit in this court, comparison is to the Amended Complaint.

[3/] The Joint Motion requested a temporary stay in part to pursue settlement negotiations. Recitations included a recognition that the two actions were similar.
> Plaintiff filed this case on December 28, 2006. *See* Complaint, Doc. 1. Additionally, Plaintiff filed a companion case for declaratory and injunctive relief in the United States District Court for the District of Columbia, *Rosebud Sioux Tribe v. Kempthorne*, No. 1:05-cv-02492-JR (D.D.C.), on December 30, 2005. Plaintiff's allegations in both cases relate to the trust accounting and trust management duties and responsibilities allegedly owed by Defendant to Plaintiff.

(ECF No. 8 at 1.)

[4/] The Motion cites RCFC 12(b)(1), 12(h)(3) and § 1500.

> Notwithstanding the briefing of the Section 1500 issue in the cases pending
> in the CFC, the parties have jointly requested that the CFC maintain a temporary stay
> of litigation in each of those cases, except for the limited task of having the Parties
> complete briefing on the application of Section 1500 so that the CFC can determine
> whether it has subject-matter jurisdiction over each case.

(D.D.C., Parties' Joint Status Report 5, ECF No. 64.)  As for the substance of the
Motion to Dismiss, Rosebud denies there is a substantial similarity in operative facts.

## Discussion

The CFC's jurisdiction under the Indian Tucker Act, 28 U.S.C. § 1505, comprises a limited waiver of sovereign immunity which grants Native American tribes the right to bring suit in this court. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) ("[T]he Indian Tucker Act[] confers a . . . waiver for Indian tribal claims that 'otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe,' § 1505."). The Tucker Act grants the CFC jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Neither the Tucker Act nor the Indian Tucker Act grants any substantive rights; a plaintiff must establish an independent substantive right to money damages from the United States in order for the case to proceed. *See generally United States v. Mitchell*, 463 U.S. 206 (1983). In Indian trust cases, the substantive right must be found in statutes from which a trust relationship can be inferred and from which a money remedy for breach can reasonably be implied. *Id*. at 217-18.

Regardless of substantive causes of action, § 1500, when applicable, divests this court of jurisdiction, and as recently construed in *Tohono,* requires dismissal. The plaintiff in *Tohono* filed a district court action against federal officials alleging a breach of fiduciary duty with respect to the management of tribal trust assets and sought equitable relief including an accounting. 131 S. Ct. at 1727. One day later, the plaintiff filed a complaint in the CFC, asserting nearly identical breaches of fiduciary duties based upon the same tribal assets and sources of fiduciary obligations, but seeking money damages. *Id*. The CFC dismissed the case before it, holding that "Section 1500 divests this court of jurisdiction over plaintiff's claim because it arises from the same operative facts and seeks the same relief as the claim

in district court."[5/] *Tohono O'odham Nation v. United States*, 79 Fed. Cl. 645, 659 (2007).  The United States Court of Appeals for the Federal Circuit reversed, holding that § 1500 is applicable only if the claims in both forums "arise from the same operative facts" and "seek the same relief." *Tohono O'Odham Nation v. United States*, 559 F.3d 1284, 1288 (Fed. Cir. 2009) (quoting *Lovelladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994) (en banc) ("For the Court of Federal Claims to be precluded from hearing a claim under §1500, the claim pending in another court must arise from **the same operative facts**, and must seek **the same relief**.").  As the relief sought in the CFC action (damages) differed from that sought in the district court (an accounting), the Federal Circuit concluded § 1500 did not apply to deprive the CFC of jurisdiction.

The Supreme Court reversed the Federal Circuit's Opinion in *United States v. Tohono O'odham Nation*, 131 S. Ct. 1723 (2011).  The Court observed that § 1500 "effects a significant jurisdictional limitation" on the CFC, to "save the Government from burdens of redundant litigation." *Id.* at 1729-30.  *Tohono* held that any difference in requested relief was not determinative of whether two suits are "for or in respect to" the same claim within the meaning of § 1500.  "The rule is more straightforward than its complex wording suggests.  The CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." *Tohono*, 131 S. Ct. at 1727.  The Court explained that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the

---

[5/]         "[A]lthough a pre-liability, stand-alone general accounting is unavailable in this court, after a presentation of sufficient evidence, an accounting is unavoidable here and will be coextensive with all the plaintiff's claims of breach.  The accounting is necessary to establish the quantum of damages.  Independent, therefore, of the monetary relief aspects of the two complaints, there is overlap in the request for an accounting.  Both actions, in sum, seek a restatement of accounts, restitution, and disgorgement and both will require an accounting.  There is plainly substantial overlap in the operative facts as well as in the relief requested.  That being the case, unfortunately for plaintiff, section 1500 is a bar.

*Tohono O'odham Nation v. United States*, 79 Fed. Cl. 645, 659 (2007) (footnote omitted), *rev'd*, 559 F.3d 1284 (Fed. Cir. 2009), *rev'd*, 131 S. Ct. 1723 (2011).

relief sought in each suit." *Id*. at 1731.  The Court held that the statute's use of the phrase "'in respect to' does not resolve all doubt as to the scope of the jurisdictional bar, but 'it does make it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity.'  It suggests a broad prohibition, regardless of whether 'claim' carries a special or limited meaning."[6/] *Id*. at 1728 (quoting *Keene*, 508 U.S. at 213).  The Supreme Court concluded, as the CFC had, that the plaintiff's two suits had "substantial overlap in operative facts" based upon the identity of the

---

[6/]  The Supreme Court noted that any hardship its ruling would cause was "far from clear" because although the tribe's CFC case would have to be dismissed, an Indian tribe in the plaintiff's position could always bring a suit in the CFC after resolution of the district court case because the statute of limitations on Indian trust mismanagement claims would only begin to run once the government provided an "appropriate accounting." *Tohono*, 131 S. Ct. at 1731.  Recognizing possible harsh results, the Court commented:

> Even were some hardship to be shown, considerations of policy divorced from the statute's text and purpose could not override its meaning.  Although Congress has permitted claims against the United States for monetary relief in the CFC, that relief is available by grace and not by right. . . .  If indeed the statute leads to incomplete relief, and if plaintiffs like the Nation are dissatisfied, they are free to direct their complaints to Congress.

*Id*. (internal citations omitted).  *But see* 131 S. Ct. 1735 n.5 (Sotomayor, J. concurring) ("The majority next suggests that Congress has tolled the statute of limitations governing the Nation's CFC claims.  But the cited statute only applies to claims 'concerning losses to or mismanagement of trust funds.'  It does not appear to toll the statute of limitations for claims concerning assets other than funds, such as tangible assets.  Expiration of the 6-year statute of limitations governing claims in the CFC is a very real prospect in this and other cases; the Nation's District Court action has been pending for more than four years." (internal citations omitted)).  In this regard, defendant reserved the right to contest the jurisdiction of the district court to grant the requested relief.  (Mot. Dismiss 9, n.8, ECF No. 36.)  See *Trusted Integration*, 659 F.3d 1159, 1166 n.2 (Fed. Cir. 2011) (applying § 1500 to circumstances at the time the CFC Complaint was filed, regardless of subsequent dismissal in the district court (citing *Keene*, 508 U.S. at 207 and *Tohono*, 131 S. Ct. at 1731)); *see also* oral argument in the Federal Circuit in *Eastern Shawnee Tribe v. United States* available at http://www.cafc.uscourts.gov/oral-argument-recordings/search (questioning counsel regarding possible consequences of lack of jurisdiction in the district court). On remand from the United States Supreme Court, the Federal Circuit recently affirmed *Eastern Shawnee Tribe of Oklahoma v. United States*, 82 Fed. Cl. 322 (2008).  *Eastern Shawnee Tribe of Okla. v. United States*, __ Fed. Appx.__, 2011 WL 5317384 (Fed. Cir. Nov. 3, 2011) (unpublished).  In analyzing § 1500, the CFC observed: "[w]hether another claim is 'pending' for purposes of Section 1500 is determined at the time at which the suit is filed in this court, not some later time."  82 Fed. Cl. at 326 (citing *Lovelacies Harbor*, 27 F.3d at 1548).  One ramification of lack of district court jurisdiction could be a transfer of the matter to the CFC pursuant to 28 U.S.C. § 1631.

trust assets and the breaches of fiduciary duty alleged, and commented, "[i]ndeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect." *Id.* at 1731.  Thus the CFC lacked jurisdiction over the claim until the district court case was either dismissed or "complete[d]" at which time the plaintiff would be "free to file suit again in the CFC if the statute of limitations is no bar." *Id. See also Yankton Sioux Tribe v. United States*, No. 2009–5027, 2011 WL 3873846, at *1 (Fed. Cir. Sept. 2, 2011) (unpublished disposition) ("[T]he Court of Federal Claims lacks jurisdiction if a suit based on substantially the same operative facts is pending in a district court regardless of whether the complaints seek overlapping relief."), *aff'g Yankton Sioux Tribe v. United States*, 84 Fed. Cl. 225 (2008).

The Supreme Court explained that in the text of § 1500 the words "claim" and "cause of action" are used synonymously.  131 S. Ct. at 1728 (quoting *Keene*, 508 U.S. at 210).  Because "cause of action" refers "simply to facts without regard to judicial remedies," the bar of §1500 applies to claims arising from the same operative facts.  *Id.* at 1729.  Precluding jurisdiction based on substantial factual overlap is "consistent with the doctrine of claim preclusion, or res judicata, which bars 'repetitious suits involving the same cause of action.'" *Id.* at 1730 (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948)).  *See also Trusted Integration v. United States*, 659 F.3d. 1159, 1164 (Fed. Cir. 2011) (noting that the Supreme Court in *Tohono* "observed . . . that because § 1500 embodies principles of res judicata, determining whether two suits arise from substantially the same operative facts for purposes of that provision can be informed by how claims are defined for res judicata purposes.").

In defense of its filing sequence here, Rosebud explains that until the Supreme Court's recent *Tohono* decision, it was well-settled that the two actions do not present the same "claim" unless they both (1) arise from the same operative facts and (2) seek the same relief.  *See Loveladies*, 27 F.3d at 1551-52; *accord Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004).  Accordingly, the two suits were relief-driven – each seeking a separate remedy – separate paths sanctioned by *Loveladies.* In any event, however, Rosebud argues its two cases are distinguishable from those in *Tohono*.

Defendant maintains that Rosebud's district court action and the instant action are based on substantially the same operative facts, thus precluding jurisdiction in this

court under *Tohono*. In its Motion to Dismiss, defendant reserved the right to contest the jurisdiction of the district court. (Def.'s Mot. Dismiss 9, n.8, ECF No. 36.) Perhaps anticipating possible statute of limitations issues should this CFC case be dismissed followed by the dismissal of the district court litigation, Rosebud's CFC Complaint includes a section titled "Equitable Tolling/Delayed Accrual" with ten paragraphs identifying the statutory mandates for audit, reconciliation and an accounting of trust funds and requiring defendant to certify through an independent party, the results of the reconciliation of tribal trust funds, as well as legislation providing that "'the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss.'" (CFC Compl. ¶ 32 (quoting Pub. L. 101-512).) It is asserted that a report subsequently performed by the accounting firm of Arthur Andersen was inadequate and incomplete and fraudulently conceals fiduciary breaches, and in particular fails to attempt to audit prior to fiscal year 1988. Because of these deficiencies, it is claimed that the full extent of losses and damages could not be ascertained. For that reason Rosebud asserts, it commenced the district court action for an accounting.

Rosebud does not dispute that both suits allege breaches of trust by the United States, although the sources of that trust are the same; Rosebud does not contend there is substantial disparity in the trust assets underlying both actions—monies, lands, and natural resources. The differences, it is contended, are that the breaches alleged in the district court related to the government's duty to maintain records of account and to provide Rosebud with a full and complete audit or accounting with respect to all trust assets. In contrast, the CFC suit alleges breaches of trust in connection with specific trust transactions – *e.g*, leasing of real estate at less than fair market value, failure to invest funds prudently, although cautioning that lack of adequate accounting has prevented discovery of additional transactions that may have involved fiduciary lapses.

> On December 28, 2006, Rosebud filed a complaint in the CFC alleging breach of fiduciary duty against the USA. The Tribe seeks monetary damages, with interest, due it resulting from the USA's past and present mismanagement of the Tribe's monetary and non-monetary trust assets. The CFC complaint delineates the duties owed by USA which include those duties set forth in 25 C.F.R. §§ 115.01 - 115.1001 and 25 U.S.C. § 177 to administer the trust assets with the greatest skill and care which include the duty to ensure that the Tribe's trust property and funds are

protected, preserved and managed as to produce the highest and best use and monetary return (CFC Comp. ¶¶ 16-30). In the CFC, Rosebud seeks to analyze specific trust transactions to establish that the USA's management fell below the applicable standard of care for a prudent trustee . . . .

A year earlier, on December 30, 2005, Rosebud had filed a separate and different complaint in the District Court, Case No. 1:05-CV-2492-JR, alleging the government breached its narrowly defined duty to provide a historical accounting of trust activity. As stated earlier, the complaint was amended July 13, 2006. At paragraph 22 of the amended District Court complaint, it is stated that by the Act of December 22, 1987, pub. L. No. 100-202, 101 Stat. 1329, Congress imposed two requirements on defendant: 1) that they audit and reconcile tribal trust funds, and 2) that they provide an accounting of such funds. See also paragraphs 16 and 18 which generally describe the duty of defendant to provide an accurate, complete and timely accounting of trust activity.

(Pl.'s Opp'n Mot. Dismiss 4-5, ECF No. 37.)

Rosebud also insists that the fiduciary duties on which each case is based are independent of each other, and that the proof and trial evidence necessary to prevail in the two cases are different. The trial in the district court will be dominated by accounting issues presented by forensic experts on whether the government failed to provide an accounting that comports with fiduciary standards. In contrast, the trial in the CFC will be dominated by evidence relating to the handling of particular trust transactions and assets such as whether specific contracts for the sale of natural resources provided Rosebud with market value; whether leases required fair rentals; whether trust funds received the highest interest available, etc. Expert testimony as to the market value of timber, gravel, land leases, rights of way, etc. will be tendered concerning whether defendant breached its fiduciary duties to Rosebud and if so, the monetary or consequential damages suffered.

That certain facts may be needed to meet elements of proof of a legal theory articulated in one complaint but not the other does not prevent a finding that two complaints constitute the same claim for purposes of § 1500. As the Federal Circuit recently explained in *Trusted Integration*:

since *Keene*, it has been clear that the legal theories asserted before the district court and the CFC are irrelevant to whether the claims arise from substantially the same operative facts. *See Keene Corp.*, 508 U.S. at 212, 113 S. Ct. 2035 (noting that § 1500 bars a subsequent suit even if 'the two actions were based on different legal

theories. . . . '). Because the same operative facts gave rise to both Count I of the
CFC complaint and at least one of the counts in the district court complaint, the CFC
correctly concluded that it lacked subject matter jurisdiction over Count I under §
1500.

659 F.3d at 1166 (alteration in original) (footnote omitted).

While the respective complaints may detail different fiduciary failures, the
underlying source and scope of the trust are the same.  It is this substantial factual
overlap rather than any difference in remedies, breaches, or requested relief that
triggers § 1500.  *See Tohono*, 131 S. Ct. at 1727 (answering affirmatively the inquiry
"whether a common factual basis . . . suffices to bar jurisdiction under § 1500").
Analogous to cited res judicata principles, as well as proscriptions against claim
splitting, these Indian trust cases simply do not lend themselves to differentiations
sufficient to preclude application of § 1500.  "The nature of Indian trust cases and the
government's trust responsibility owed to Indian tribes does not lend itself to a simple
delineation or separation of operative facts as they pertain to the government's
various duties owed to Indian tribes."  *Ak-Chin Indian Cmty. v. United States*, 80 Fed.
Cl. 305, 320 (2008).

The assets and fiduciary duties and factual underpinnings in Rosebud's actions
are the same.  Rosebud has not identified sufficient operative factual differences to
distinguish its cases from those in *Tohono*.[7]  While the breaches may differ, the trust

_____

[7] In *Tohono*, the district court Complaint was an action to redress breaches of trust in the
management and accounting of trust assets including funds and lands, and to compel an accounting
of all trust assets.  The history, source and nature of trust responsibilities was outlined, as were trust
assets (including land and natural resources) and funds and Congressional actions to rectify federal
breaches and failures in this regard) including the production of reports by government contractor
Arthur Andersen, LLP asserted to be deficient such as to preclude the commencement of the statute
of limitations).  Count One sought a declaration that (1) the Arthur Andersen report was not
adequate; (2) defendants failed to provide plaintiff with an adequate accounting; and (3) delineated
the fiduciary duties and breach thereof.  In Count Two, plaintiff  sought injunctive relief requiring
adequate accountings, appropriate equitable relief (*e.g.*, disgorgement, equitable restitution, or an
injunction directing action against third parties), and direction to conform to fiduciary
responsibilities and trust breaches.

The CFC Complaint was an action for money damages for breaches of trust for defendant's
mismanagement of plaintiff's trust property.  The history, source and nature of the land and minerals
(continued...)

relationship is the same.  Despite some disparate requested relief, supporting legal theories and predicted difference in evidentiary proof, side-by-side parsing of the operative facts in the two Complaints in Appendix hereto, confirms substantial shared operative facts.  That the accounting sought in the district court suit (required incident to fiduciary responsibilities as well as by statute) may be a predicate for at least proof of damages or identification of additional breaches in the CFC action, does not overcome the substantial shared operative facts.

Other CFC cases have reached the same conclusion in similar cases.  *See Yankton Sioux Tribe v. United States*, 84 Fed. Cl. 225 (2008) (holding, despite the plaintiff's contention that the operative facts were distinct in each suit, the plaintiff's federal district court and CFC suits presented substantially the same operative facts and dismissing under section 1500), *aff'd*, No. 2009–5027, 2011 WL 3873846 (Fed. Cir. Sept. 2, 2011) (unpublished disposition); *Lower Brule Sioux Tribe v. United States*, No. 06-9226, slip op. (Fed. Cl. Dec. 1, 2011); *Prairie Band of Potawatomi Indians v. United States*, No. 06-921L, 2011 WL 5925328 (Fed. Cl. Nov. 29, 2011); *Coeur d'Alene Tribe v. United States*, No. 06-940L, 2011 WL 5822177 (Fed. Cl. Nov. 18, 2011); *Iowa Tribe of Kan. and Neb. v. United States,* No. 06-920L, 2011

---

[7] (...continued)

estates on plaintiff's reservation, as well as the creation of trust funds derived therefrom, is outlined as are the sources of defendant's trust obligations and duties, including proper trust administration and accountings.  The CFC Complaint asserted a variety of breaches of trust in the administration of trust assets and accounting therefore.  Count One sought money damages for breach of fiduciary duty in connection with plaintiff's mineral estates, alleging failure to account and leasing for less than fair market value.  Count Two sought monetary damages for similar breaches incident to plaintiff's non-mineral estates; Count Three, for management of judgment funds; and Count Four, for trust funds.  Relief sought included damages.

The Supreme Court concluded there was a substantial overlap in operative facts in these two suits.

The two actions both allege that the United States holds the same assets in trust for the Nation's benefit.  They describe almost identical breaches of fiduciary duty—that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example.

*Tohono*, 131 S. Ct. at 1731 ("The CFC dismissed the action here in part because it concluded that the facts in the Nation's two suits were, 'for all practical purposes, identical.' [*Tohono*,] 79 Fed. Cl. [at] 656 [ ].  It was correct to do so."); *see also Tohono*, 79 Fed. Cl. at 648–51 (comparing complaints side-by-side).

WL 5600535 (Fed. Cl. Nov. 17, 2011); *Oglala Sioux Tribe v. United States*, No. 05-1378L, slip op. (Fed. Cl. Oct. 27, 2011); *Winnebago Tribe of Neb. v. United States*, No. 06-913L, 2011 WL 5042385 (Fed. Cl. Oct. 25, 2011); *Omaha Tribe of Neb. v. United States*, No. 06-911L, 2011 WL 4793244 (Fed. Cl. Oct. 7, 2011); *Cheyenne River Sioux Tribe v. United States*, No. 06-915L, slip op. (Fed. Cl. Oct. 7, 2011) (unpublished order); *Stillaguamish Tribe of Indians v. United States*, No. 06-916L, slip op. (Fed. Cl. Oct. 7, 2011) (unpublished order); *Red Cliff Band of Lake Superior Chippewa Indians v. United States*, No. 06-923L, slip op. (Fed. Cl. Sept. 19, 2011) (unpublished order); *E. Shawnee Tribe of Okla. v. United States*, 82 Fed. Cl. 322 (2008), *rev'd*, 582 F.3d 1306 (Fed. Cir. 2009), *vacated*, 131 S. Ct. 2872 (2011); *Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305 (2008). *See also Stockton E. Water Dist. v. United States*, __ Fed. Cl. __, 2011 WL 5154463, at *7 (Oct. 31, 2011) (applying *Tohono* to taking and due process claims).

Whether in connection with a request for an accounting (or a better accounting) or a determination of compensatory damages, in both cases the court would be presented with accounting and other record evidence together with testimony thereon, in considering issues in connection with the government's management and administration of tribal assets and funds. The nature of Indian trust cases and the government's trust responsibility does not substantially segment into distinct operative facts or trust duties, regardless of respective remedies sought.

> Unlike regulatory disputes, suits brought by Indian tribes, claiming a breach of trust, do not neatly separate between the exclusively injunctive relief typical in a district court APA review of agency action on the one hand, and, on the other hand, a suit here for money damages flowing from the consequences of that agency action. In substance, the action for breach of trust in this court is an equitable proceeding that produces a monetary remedy. Thus while the court has jurisdiction because of the demand for money, the process for getting to that relief is fundamentally equitable, meaning that there is potential overlap of both the accounting and money aspects of the two complaints.

*Tohono*, 79 Fed. Cl. at 657.

Moreover, it is not the case that jurisdiction for an equitable accounting in all instances rests solely with district courts. Instead, "'the court has the power to require an accounting in aid of its jurisdiction to render a money judgment on that claim.'" *Id.* at 653 (citing *Klamath & Modoc Tribes v. United States*, 174 Ct. Cl. 483, 490-91 (1966). As the court observed in the original *Tohono* opinion, assuming the

existence of a trust as well as a breach, then "[t]he United States, as trustee, would have to meet plaintiff's prima facie case of breach with a full accounting for its conduct.  In short, assuming this action were to proceed in this court, and plaintiff satisfied its burdens of proof, what would ensue would amount to an accounting, albeit in aid of judgment." *Id.* at 653.  While the scope of available accounting relief in the CFC is not before the court, it is sufficient to note the likelihood of substantial evidentiary overlap in this regard.  See *Tohono*, 131 S. Ct. 1735 n.5 (Sotomayor, J., concurring).

Indeed, despite its contention that the district court suit will be dominated by accounting issues, Rosebud also requests declaratory and mandatory injunctive relief to compel the government to manage tribal assets and trust funds in "full compliance with all applicable law and with their duties as the Plaintiff's guardian and trustee." (D.D.C. Compl. ¶ 36, ECF No. 12.)

Accordingly, for the foregoing reasons, the court finds that Rosebud's district court complaint and its subsequently-filed CFC complaint involve substantially the same operative facts for purposes of the § 1500 jurisdictional bar.[8]

---

[8] As the court in *Winnebago Tribe of Nebraska* observed, the circumstances presented here are distinguishable from those recently addressed by the Federal Circuit in *Trusted Integration*:

In that case, the plaintiff alleged in the Court of Federal Claims that the United States Department of Justice breached a license agreement, while in federal district court it alleged that the United States Department of Justice breached an agreement to act as a joint enterprise.  *Id.* at *7-9.  The Federal Circuit held that the plaintiff was not "simply repackaging the same conduct into two distinct legal theories," but instead had "asserted two distinct claims, that involve[d] distinct agreements, whose breaches [gave] rise to distinct damages, and which require[d] distinct proofs."  *Id.* at *10 .…  Unlike the circumstances presented in *Trusted Integration, Inc.*, however, resolution of the Tribe's claims in this court would require consideration of the facts alleged and conduct described in the Tribe's federal district court complaint.  In other words, the Tribe has merely taken its allegations of the United States' conduct from its suit in federal district court and repackaged them in its Court of Federal Claims suit.

2011 WL 5042385, at *5 n.3 (alterations in original).

## CONCLUSION

Accordingly, for the above-stated reasons, defendant's Motion to Dismiss for Lack of Jurisdiction, ECF No. 36, filed June 13, 2011, is **GRANTED**.  Rosebud's Complaint, ECF No. 1, is **dismissed** for lack of subject-matter jurisdiction pursuant to 28 U.S.C. § 1500.  The Clerk is directed to enter judgment accordingly.

It is so **ORDERED.**


s/ James F. Merow
James F. Merow
Senior Judge

**APPENDIX A**

**INTRODUCTION, PARTIES, JURISDICTION, AND STATEMENT OF FACTS**

| DISTRICT COURT AMENDED COMPLAINT (ECF No. 12) | COURT OF FEDERAL CLAIMS COMPLAINT (ECF No. 1) |
|---|---|
| "[The action is] for an accounting and a reconciliation of [Rosebud's] trust funds, for equitable relief, and for such other relief as the Court deems appropriate." (D.D.C. Comp. ¶ 1.) | "This is an action for money damages, with interest, against the Defendant, United States of America. This cases arises out of Defendant's breaches and continuing breaches of its constitutional, statutory, regulatory, treaty, common law and other legal, accounting, fiduciary, administrative and management duties owed to [Rosebud] to generate, invest and manage [Rosebud's] tribal trust assets and property in the manner prescribed by applicable law." (CFC Compl. ¶ 1.) |
| "[Rosebud] is a federally recognized Indian tribe, recognized by the United States as a sovereign Indian tribe with legal rights and responsibilities. [Rosebud] has a governing body duly recognized by the Secretary of the Interior.  [Rosebud] is also recognized by the United State[s] as a tribe which is eligible for the special programs and services provided by the United States to Indians because of their status as Indians, and because of [Rosebud's] treaties and other agreements with the United States." (*Id*. ¶ 2.) | "[Rosebud] is a federally recognized Indian tribe, under the protection of the United States, … as a sovereign Indian tribe with legal rights and responsibilities. [Rosebud] has a governing body duly recognized by the Secretary of the Interior. [Rosebud] is also recognized by the United States as a Tribe which is eligible for the special programs and services provided by the United States to Indians because of their status as Indians, pursuant to [Rosebud's] treaties and agreements with the United States, various Acts of Congress and federal common law." (*Id*. ¶ 2.) |
| Defendants are the Secretary of the Interior, "charged by law with carrying out the duties and responsibilities of the United States as trustee for the [Rosebud];" the Secretary of the Treasury, "the custodian of [Rosebud's] trust funds … responsible for the administration of those funds and for the preparation and maintenance of records in connection with those funds;" and the Special Trustee for American Indians, with duties and responsibilities "detailed in the Act of October 25, 1994, Pub. L. No. 103-412, 108 Stat. 4239." (*Id*. ¶¶ 3, 4 & 5.) | The defendant is the United States of America.[1] (*Id*. ¶ 3.) |
| Jurisdictional grounds include 28 U.S.C. §§ 1331 and 1362 as well as treaties and other federal statutes governing the legal relationship with the United States.  28 U.S.C. § 1361 and 5 U.S.C. §§ 702, 704 and 706 are also invoked to compel federal officers to perform their duties. (*Id*. ¶ 6,.) | "This Court has jurisdiction over the subject matter of this action under the Tucker Act, 28 U.S.C. § 1491 and the Indian Tucker Act 28 U.S.C. § 1505 in that this action involves claims brought by an Indian tribe . . . for money damages arising under the constitution, laws, treaties and regulations of the United States, Executive Orders of the President and federal common |

| | |
|---|---|
| | law governing the administration and management of property and assets held by the United States in trust for [Rosebud].…  The Court also has jurisdiction over the subject matter under the Constitution of the United States and the *American Indian Trust Fund Management Reform Act of 1994*, 25 U.S.C. § 4001 et seq., which required the Defendant to provide [Rosebud] with a full and complete accounting of the holder's funds to the earliest possible date.  25 U.S.C. §4044." (*Id.* ¶ 4.) |
| "[Rosebud] is a party to, and/or the successor in interest to, the signatories of certain Indian treaties with the United States and it is the beneficial owner of certain monies currently or previously held in trust for [Rosebud] by the United States, as well as of certain land and other trust assets, title to which is held in trust by the United States for the benefit of the Tribe. [Rosebud] is also the owner of the natural resources located on their land held in trust and managed by the United States, including, among others: water, timber, and a variety of mineral reserves.  [Rosebud's] trust holdings also include land which is valuable for grazing, agricultural and recreational use, and for other purposes." (*Id.* ¶ 8.) | Rosebud is the successor-in-interest to signatories to certain treaties with the United States, is the beneficial owner of certain monies currently or previously held in trust by the United States, land valuable for grazing, agriculture and recreational uses, and other assets held in trust. Trust assets also include the natural resources on that land, including water, timber, gravel and a variety of mineral reserves.  Rosebud also holds off-reservation assets and usufructuary rights also held in trust by the United States. (*Id.* ¶ 16.[2]/) |
| Defendant has "approved, among others: (A) agreements for the use and extraction of natural resources which are or were located on [Rosebud's] trust property, (B) leases of [Rosebud's] trust lands, (C) easements across [Rosebud's] trust land, (D) grazing permits on [Rosebud's] trust land, and (E) other grants, to third parties, of the authority to use certain of [Rosebud's] trust lands and natural resources for specific purposes . . . . [and] in certain limited instances, conveyed title ... to third parties and ... approved the use of certain of [Rosebud's] trust lands for Federal purposes. By granting these rights, the Defendant . . . assumed the legal responsibility for the collection of fair and equitable compensation for those conveyances or uses including, but not limited to: royalty payments, grazing fees, rents, purchase prices, and such other fees and payments as are or were appropriate." (Id. ¶ 12.) | "Defendant has assumed control and management over [Rosebud's] trust property and trust resources. …  Defendant has approved leases, easements, rights-of-way and other uses and conveyances of the property and the resources located therein. Defendant has also approved various third party uses and taking of said land and resources.  In so doing the Defendant assumed responsibility for the collection, deposit and investment of the income generated or which should have been generated by such conveyances and use rights." (*Id.* ¶ 20.) |

| | |
|---|---|
| "Under the terms of its treaties, and under other applicable law, tribal land held in trust and the tribal resources located on those trust lands are inalienable except as authorized by Congress, or by the terms and conditions of [Rosebud's] treaties with the United States . . . . Congress has granted the Secretary of the Interior the authority to approve conveyances of certain interests in [Rosebud's] trust lands and trust resources, including but not limited to: leases, easements, rights of way, resource harvesting and resource use agreements.  Federal law establishes the terms and conditions under which such conveyances may be made.  Federal law also generally requires that compensation be paid to [Rosebud] for the conveyance and the use of tribal lands and tribal trust resources."<br>(*Id.* ¶ 9.) | "Congress has granted the Secretary of the Interior the authority to approve certain limited conveyances of certain interests in [Rosebud's] trust lands and trust resources, including but not limited to: leases, easements, rights-of-way, resource harvesting and resource use agreements.  Federal law establishes the terms and conditions under which such conveyances, leases and agreement may be made.  Federal law also generally requires that compensation be paid to [Rosebud] for the conveyance and/or use of its trust lands and trust resources."<br>(*Id.* ¶ 17.) |
| "Because the United States holds [Rosebud's] trust lands, trust resources and the proceeds generated by or from the use, sale, or taking of said resources in trust, it has assumed the obligations of a trustee . . . .  As trustee, the United States has a fiduciary relationship with [Rosebud] and an obligation to administer the trust with the greatest skill and care possessed by the trustee."<br>(*Id.* ¶ 14.)<br>"The trust obligation of the United States includes, among other duties, the duty to ensure that tribal trust property and trust funds are protected, preserved and managed so as to produce the highest and best use and return to the tribal owner consistent with the trust character of the property.  Said duty requires the United States to further insure that [Rosebud] is afforded its full rights to compensation."<br>(*Id.* ¶ 15.)<br>"Defendant and his predecessors have, when they took office, assumed the responsibility for the collection of the payments…and…have assumed the responsibility for the investment of the corpus of the trust, including the trust assets, the income that was and is being generated by [Rosebud's] trust lands, and trust resources and by the other trust monies paid to [Rosebud]."<br>(*Id.* ¶ 13.) | "Because the United States holds [Rosebud's] lands, resources and the proceeds generated by and from the use, sale, or taking of said resources in trust, it has assumed the obligations of a trustee . . . .  As trustee, the United States has a fiduciary duty to [Rosebud] to administer the trust with the greatest skill and care possessed by a trustee.  The United States has charged itself with a moral obligation of the highest responsibility and trust in its conduct with Indian tribes and its conduct should therefore be judged by the most exacting fiduciary standards.…   This includes a duty to insure that the tribal trust property, funds and assets are protected, preserved and managed in full compliance with the Defendant's trust duties and applicable law."<br>(*Id.* ¶ 21.) |
| "The trust obligations of the United States also include … the duty to: (A) collect the trust funds rightfully | "The trust obligation of the United States includes, among other duties, the duty to insure that tribal trust |

owed to [Rosebud]; (B) create trust accounts to hold those funds[;] (C) insure that the monies owed or paid for the loss or use of tribal lands and trust resources are placed into those accounts[;] (D) maintain adequate records with respect to [Rosebud's] trust property[;] (E) maintain adequate systems and controls to guard against errors or dishonesty; (F) provide regular and accurate accountings to [Rosebud] as the trust beneficiary; (G) refrain from self-dealing or benefiting from the management of the trust property; (H) insure the Federal Government's compliance with the protections afforded [Rosebud] under the Constitution of the United States and other applicable law [;]and (I) to consult with [Rosebud] regarding the management of its trust property."

(*Id*. ¶ 16.)

"Congress imposed two requirements on the Defendants: (1) that they audit and reconcile tribal trust funds, and (2) that they provide the tribes with an accounting of such funds. Congress reaffirmed these two mandates in subsequent statutes.… Congress further required that the Defendants certify, through an independent party, the results of the reconciliation of tribal trust funds."

(*Id*. ¶ 22.)

property and trust funds are protected, preserved and managed so as to insure the highest and best use of those assets and funds, and where applicable, the highest revenue to the tribal owner consistent with the trust character of the property. Said duty requires the United States to further insure that [Rosebud] is afforded its full rights to compensation for any taking of trust assets as required by the Constitution of the United States and other applicable law, and that it administers those duties with the greatest skill and care possessed by a trustee."

(*Id*. ¶ 23.)

"The Defendant . . . also has responsibility to:

A. Provide adequate systems for accounting for and reporting trust fund balances;
B. Provide adequate controls over receipts and disbursements;
C. Provide periodic and timely reconciliations to insure the accuracy of accounts;
D. Determine accurate cash balances;
E. Prepare and supply account holders with periodic statements of their account performance and with balances of their account to be available on a daily basis;
F. Establish consistent written policies and procedures for trust fund management and accounting;
G. Provide adequate staffing, supervision and training for trust funds management and accounting; and
H. Appropriately manage the natural resources located both within the boundaries of Indian reservations and trust lands."

(*Id*. ¶ 24.)

"[T]rust obligations of the United States include… the duty to (a) exercise opportunities to obtain monetary benefits from [Rosebud's] trust land and resources, (b) enter into reasonable contracts to advance those opportunities, (c) timely collect the trust funds rightly owed to [Rosebud] and any penalties and interest associated with income generating transactions, (d) timely create trust accounts to hold those funds, (e) insure that the monies owed or paid for the loss or use of trust lands and resources are placed in those accounts in a timely manner, (f) maintain adequate records with respect to [Rosebud's] trust property, (g) maintain adequate systems and controls to guard against errors or dishonesty, (h) provide regular and accurate accountings to [Rosebud] as the trust

beneficiary, (i) refrain from self-dealing or benefiting from the management of the trust property, (j) insure the Federal Government's compliance with the protections afforded [Rosebud] under the Constitution of the United States and other applicable law, and (k) consult with [Rosebud] regarding the management of its trust property and the implementation of the Government's treaty obligations." (*Id.* ¶ 25.)

"Defendants have never rendered a full, accurate or timely audit or accounting to [Rosebud] of its trust assets, or provided [Rosebud] with a clear statement as to the origin or use of all of the funds in each of those accounts…. Defendants have kept and continue to keep [Rosebud], who is the trust beneficiary, uninformed as to: (A) the trust property, trust funds and trust resources it owns or owned, (B) the income and interest that [Rosebud's] currently owned and previously owned trust property, resources and funds have produced, and (C) what disposition–if any–has been made of that income; and (D) whether the United States has properly managed [Rosebud's] trust assets." (*Id.* ¶ 18.)

"[M]ismanagement … has resulted in losses to [Rosebud], a trust beneficiary. However, the extent of the losses is unknown to [Rosebud] at this time because the Defendants have:

(A) failed to provide [Rosebud] with a full and complete accounting of the source of its trust funds,

(B) failed to provide [Rosebud] with an accurate accounting of the amount contained in each of its accounts, …

(C) failed to provide [Rosebud] with a comprehensive statement of the use and investment of its trust funds…,

(D) failed to maintain accurate books and records of [Rosebud's] account,

(E) lost and destroyed relevant trust account records,

(F) failed or refused to disclose known losses, or unmade or incomplete payments to [Rosebud]…,

(G) failed or refused to reimburse trust beneficiaries for losses to their trust funds, and

(H) failed to properly create certain trust accounts and deposit the appropriate monies in those accounts."

"For at least the past several decades, Defendant's accounting for, management of, and exercise of other fiduciary responsibilities and control over Indian trust funds has been thoroughly examined and highly criticized by private entities, various government agencies, Congress and the courts. Problems identified include, but are not limited to, the Defendant's inability to account for funds due to its loss of or failure to keep records, undue delays in making investments, and poor investment decision-making, such as investing in failed financial institutions. The Defendant's continuing widespread and well-documented Indian trust fund mismanagement, and other breaches of trust have affected and continue to affect [Rosebud's] trust assets and have caused and continue to cause monetary losses to [Rosebud]." (*Id.* ¶ 27.)

"Defendant has failed to keep records of and/or has failed to keep proper records regarding [Rosebud's] trust accounts and assets, and these failures continue today. Defendant has never provided [Rosebud] with a full and meaningful accounting of its trust assets and trust funds. Indeed, before filing this action, [Rosebud] filed a complaint in the United States District Court for the District of Columbia, *Rosebud Sioux Tribe v. Kempthorne*[,] 1:05-CV-02492 [the district court action], demanding a full accounting of its trust accounts, trust assets and trust property. To date, the Defendant has failed to provide that accounting or other sufficient information which would otherwise afford [Rosebud] the ability to determine whether, and to what extent, it has suffered a loss as a result of the Defendant's continual wrongdoing or other breaches of trust." (*Id.* ¶ 28.)

"Defendant has failed to obtain and continues to fail to obtain the maximum investment return possible . . . on [Rosebud's] trust funds. This breach of fiduciary duty

| | |
|---|---|
| (*Id.* ¶ 21.)<br>"To date, the Defendants have failed to provide [Rosebud] with a full, accurate and timely accounting of its trust funds and have failed to meet their other statutory and legal obligation to [Rosebud] leaving them in clear breach of their trust responsibility."<br>(*Id.* ¶ 26.) | has caused and continues to cause monetary loss to [Rosebud]."<br>(*Id.* ¶ 29.)<br>"Complaints voiced by tribal leaders and other third parties led the Congress of the United States to undertake an investigation into Defendant's management and oversight over tribal trust accounts. E.g. *Cobell* [*v. Norton*, 240] F. 3d 1081 (D.C. Cir. 2001). Congress has recognized the gross breaches of trust described herein, as has the General Accounting Office and the Office of Management and Budget. The Office of Management and Budget consistently placed the financial management of Indian trust funds, including those belonging to the [Rosebud], as a 'high risk liability' to the United States."<br>(*Id.* ¶ 30.) |

1/ Difference in named defendants is not relevant. As the Supreme Court explained in *Tohono*, "the CFC bar [of § 1500] applies even where the other action is not against the Government but instead against a 'person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States . . . . A person acts under color of federal law in respect to a cause of action by claiming or wielding federal authority in the relevant factual context." 131 S. Ct. at 1728.

2/ Paragraphs five through fifteen generally describe the evolution of the Rosebud tribe, the various statutes and treaties establishing the trust duties alleged, and the formation of the Rosebud Sioux Reservation.